## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HAI DUONG**                                              **CIVIL ACTION**

**VERSUS**                                                  **NO.  18-900**

**DARREL VANNOY, WARDEN**                         **SECTION "R"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Hai Duong ("Duong"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.[2]  On June 21, 2012, Duong was indicted by a Grand Jury in Jefferson Parish for two counts of committing aggravated rape, two counts of committing molestation of a juvenile, and one count of committing aggravated oral sexual battery.[3]  Duong entered a plea of not guilty in the case.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. 4-2, p. 47.

[3] St. Rec. Vol. 1 of 8, Bill of Indictment, 6/21/12.

[4] St. Rec. Vol. 1 of 8, Minute Entry, 7/18/12.

The record reflects that the victims, Nicole and Janet,[5] were 13 and 12 at the time of they made the allegations in 1999 and were adults at the time of trial, which occurred 14 years later.[6]

Carl, the victims' father, testified that he and Alice were previously married and had three children, Nicole, Janet, and a son. Duong was married to Mary, Alice's sister. Carl and Alice divorced in 1995. Alice had custody of their daughters, but they would stay with Carl on weekends. In 1996, Duong and Carl began running an automotive repair shop out of Carl's garage. Carl testified that from 1996 until 1999, his daughters spent more time at Duong and Mary's home than with Carl. In 1999, Carl had a girlfriend so he did not spend much time with his daughters. During that time, Carl's daughters had overnight stays at Mary and Duong's home. Carl recalled that Duong had the opportunity to spend time alone with Carl's daughters.

Carl was shocked when he learned of his daughters' allegations in 1999. He testified that he trusted Duong and never saw him touch his daughters inappropriately. Carl admitted that after his daughters alleged that Duong abused them, Duong left without telling Carl where he was going.

Terry Ford, a human resources manager for the successor company of the Input/Output Company, authenticated Duong's employment records. According to the records, Duong began working for Input/Output on January 28, 1982, and ended his employment by resignation on May 14, 1999. The records did not show when Duong gave notice of his intention to resign. The records reflected that on May 19, 1999, Duong completed a "payout request form" requesting a cash distribution from his retirement plan. The form was signed by both Duong and his wife. Duong incurred a tax penalty for taking a cash distribution.

---

[5]In accordance with La. Rev. Stat. Ann. § 46:1844(W), the state appellate court used pseudonyms to refer the sex crime victims as Nicole and Janet and their parents as Carl and Alice. This Court will do the same for consistency with the state appellate court's opinion.

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit on direct appeal. *State v. Duong*, 148 So.3d 623 (La. App. 5th Cir. 2014); St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-63, 8/8/14.

Mary Duong, Duong's wife and Alice's sister, testified that she worked at Alice's wig store in the 1990's. During that time, Duong and Mary lived in a house across the street from the Catholic church. Janet and Nicole went to church multiple times a week to attend mass and catechism classes and would visit Duong and Mary's home on those days. The girls would occasionally spend the night at the home. Mary testified that after Carl and Alice's divorce, Nicole began misbehaving. Mary explained that Nicole would not listen, would talk back and left the house without permission to sleep over at a cousin's house.

Mary testified that one day in 1999, while at Alice's wig shop, Janet and Nicole made troubling allegations against Duong. After Alice told Mary about the allegations, Mary had Duong pick her up from the store and they went home. Mary claimed that she questioned Duong about the allegations but that he Duong did not respond to her questions. Mary recalled having a telephone conversation with Alice later that evening, but could not recall what was said during that conversation.

On May 17, 1999, police came to her home looking for Duong. Mary did not recall what she told police. Mary recalled that Duong ended his employment after the allegations. She went with Duong to cash out his retirement plan and he gave her the money to support herself. She testified that Duong left Louisiana because Carl threatened to kill him but he did not tell her where he was going. Months later, Mary flew to another state to be with Duong. They later moved to New Mexico. After his heart attack in 2010, they moved to Wyoming. During his time away from Louisiana, Duong used the alias "Henry Tony" because he was hiding from the government because they wanted him in connection with the victims' allegations.

At some point, Mary attended her father's funeral. She saw the victims at that time and told them she was sorry for them. Mary testified that she never witnessed any of the acts alleged

by the victims.  She explained that when she was not present in the home, Duong and his mother watched the girls.  She admitted that she could not be certain that her mother-in-law would always see what was going on in the home.

Alice, Nicole and Janet's mother, testified that after her divorce, the girls spent Saturdays at Carl's house and that Duong was always there working on cars.  She recalled that sometimes Nicole would complain that she did not want to stay at her Carl's house.  Alice testified she would frequently bring her children to Doung and Mary's house.

In 1999, Nicole was rebelling against her mother.  During an argument at the wig store, Alice questioned Nicole about her conduct.  Nicole told Alice that Duong had been molesting her and raping her at Carl's house since she was young.  When Alice questioned Janet about Nicole's allegations, Janet responded that Duong had sexually abused her as well.  Alice recalled that both girls cried.  Later that evening, when Alice spoke with Mary on the phone, Mary told her that Doung had admitted that the allegations were true.  After Alice's parents told her not to report the allegations to the police, Alice encouraged her daughters to tell the school counselor and they did so.

A detective eventually came to Alice's home to ask questions.  On May 17, 1999, Alice's daughters gave interviews at the Children's Advocacy Center ("CAC") and underwent medical examinations at Children's Hospital.  Alice gave a recorded statement to Detective Broussard on that date.  According to Alice, the family did not discuss the abuse thereafter as it was awkward to discuss.  She recalled that the victims went to counseling for eight months.

Detective Broussard of the Jefferson Parish Sheriff's Office testified that he first became involved in the investigation of the alleged aggravated rapes of Nicole and Janet on May 10, 1999, when he received a referral from a child protection agency.  Broussard set up CAC interviews of

the victims.  Immediately prior to the interviews, he met with Alice who related what she had learned from her daughters.  Each victim was interviewed separately by Omalee Gordon while Broussard monitored the interviews from a separate room.  Broussard watched the interview on a television screen and was able to communicate with Gordon through a microphone in his room and an earpiece that Gordon was wearing.  Audio and video recordings of the victims' interviews were made.  During the interviews, the victims detailed the allegations made against Duong which they later testified to at trial.  Those interviews were played for the jury.

During her interview, Nicole explained that Duong began molesting her when she was six years old and that he touched her all over her body including her chest and vagina.  Nicole described the incidents as occurring in the bedroom and the computer room at Mary and Duong's house.  Nicole stated that, when she was sleeping, Duong would wake her up and climb on top of her and that he would do the same to Janet.  She recalled that the incidents would occur during the holidays and summer and that Duong told her not to tell anyone.

Nicole recalled that Duong raped her when she was eleven years old and that he had raped her more than three times during the period of abuse.  Nicole explained that she told her mom about the incidents about a month prior to her CAC interview.  About a week after she told her mom, Nicole disclosed the abuse to a school counselor.

During her CAC interview, Janet told Gordon that Duong put his "ding-a-ling" in her private and indicated to her crotch area.  She completed a paper diagram marking the areas where Duong touched her.  Janet claimed that there was one instance of vaginal sexual intercourse.

After the interviews, the victims were examined at Children's Hospital.  In the meantime, Detective Broussard and another officer went to Duong's home to speak with him.  Mary told them that she did not know where Duong was and that the victims and Alice were lying.  Broussard then

went Duong's workplace and was told by various staff members that Duong had quit his job that day.  Broussard was unable to locate Duong and later secured a warrant for his arrest on May 25, 1999.  Duong was arrested in Wyoming in February 2012, pursuant to an outstanding warrant, and extradited back to Louisiana.  Thereafter, Broussard met with Duong and advised him of his rights. Duong told Broussard that he had retained counsel and had been advised not to talk to him. Several months after his arrest and extradition, Mary solid her belongings and moved back to New Orleans.

Janet was twenty-six years old at the time of the trial.  She testified that she and her sister frequently spent time at Duong and Mary's home when they were younger.  After her parents' divorce, she spent time at her father's home.  She testified that she and Nicole would sometimes stay at their cousins' homes but they always had permission to do so.

Janet explained that Duong began sexually abusing her when she was five or six years of age.  The incidents occurred at both Duong and Carl's homes.  Initially, the incidents occurred on a bed and Duong touched her chest and genitals.  Janet recalled that the incidents usually occurred on Thursdays and Saturdays, the days when she and Janet attended church across the street from Duong's home and that Dung would abuse her when no one else was in the home other than Nicole or when Duong's mother was in a separate room.  Janet became afraid to visit Duong's home.

Janet explained that Duong would remove his clothes and make her touch him and that he would insert his fingers inside of her vagina.  Janet testified that Duong would sometimes use a back massager on her genitals and showed her pornographic videos.  Janet recalled that when she was 11 or 12 years old, Duong had oral and vaginal sex with her on the living room couch at her father's house.  She could not recall whether they had sex again after that incident.  Duong always gave her money.  She did not tell anyone about the incidents because Duong told her she would get in trouble.

Janet recalled that she admitted to her mother that Duong had sexually abused her when mother told her about Nicole's allegations. After Janet and Nicole made their allegations, Mary and Duong fled. Janet testified that she went to counseling a few times. She explained that she did not speak to Nicole about the abuse due to embarrassment. Janet testified that she did not want to remember the abuse but that it still affected her and that she collected sexual offender registration cards so she would know who was around her.

Nicole was 27 years old at the time of trial. She explained that after her parents' divorce, she visited her father on weekends. She recalled the Duong regularly worked on cars at her father's house and that she and her sister frequently went to Duong's home, including on days they attended church. Nicole admitted that she would sometimes leave her father's house to spend the night at her cousin's house but testified that she always had permission to do so.

Nicole recalled giving the CAC interview. Nicole testified that her first memory of sexual abuse by Duong was when she was 7 years old and that he put a back massager on her genitals. She believed that the first time she had vaginal sex with Duong was when she was 7 ½ years old. She explained that the sexual abuse continued for years. Duong would show her pornographic videos. He would expose his penis to her and put his mouth on her vagina. Nicole testified that on one occasion when she was at her father's house, Duong put grapes in her vagina. She admitted that she had not previously told anyone about the incident. She recalled another instance of vaginal sexual intercourse that occurred around the time of Vietnamese New Year. She described another instance of sexual intercourse that occurred at her father's house in the salon room while her father was in the garage.

Nicole explained that Duong told her not to tell anyone about the incidents and gave her money, which she stored in the back of her closet. Nicole testified that she did initially tell anyone

because she was embarrassed.  Nicole explained that she told her mom about the sexual abuse in 1999, a few weeks after the last incident occurred at Duong's house while his mother was in the garden.  Nicole said she saw a counselor for a time.  She admitted that she had a boyfriend during that the time of her allegations but said that she and he only kissed.  She denied ever going out with her boyfriend at night without telling her parents.

On May 17, 1999, Dr. Scott Benton, an expert in Pediatric Forensic Medicine and Child Abuse, including Child Sexual Abuse, evaluated Janet and Nicole at the Audrey Hepburn CARE Center at Children's Hospital and created medical reports in connection with those evaluations.  Dr. Benton testified at that time Janet told him that her uncle had "raped" her, which she explained meant "the boy puts his thing in the girls' private," and that it had last occurred in April 1999.  She also told Dr. Benton that Duong touched her all over.  The results of Dr. Benton's physical examination of Janet were normal and her hymen was intact.  Dr. Benton testified that normal results were not necessarily inconsistent with sexual abuse as many sexual acts do not cause trauma.  He explained that lack of trauma can be due to the gentleness of the perpetrator or use a lubricant.  Dr. Benton also explained that the vagina, anus, and mouth are able to rapidly heal and that events that cause scars are not common.

Dr. Benton testified that there was delayed disclosure in Janet's case.  He explained that Janet exhibited some of the reasons for delayed disclosure including embarrassment.  He stated that she was also possibly conflicted regarding the abuse because Duong gave her money which she spent on junk food.  He explained children may disclose different details to different classes of people and often disclose more information to doctors.

Dr. Benton interviewed Nicole prior to examining her.  Nicole told Dr. Benton that Duong began molesting her when she was six years old and started having sex with her when she was

eleven years of age.  The last incident had occurred two months prior.  Dr. Benton's medical examination of Nicole revealed a lack of continuity in her hymen, which indicated that Nicole's hymen had been previously injured and healed in that position.  Dr. Benton believed the findings were definitive of blunt penetrating trauma and consistent with rape.  Dr. Benton testified that the reasons for delayed disclosure in Nicole's case were that her family did not talk about problems, and Duong bribed and threatened her.  He believed that Nicole displayed elements of sequential disclosure in that she testified regarding an incident that she had not previously disclosed to anyone.

Duong testified that he had never been arrested for a crime before his arrest on the charges in this case.  Duong recalled that his wife did not appear to believe him when he denied doing anything to the victims and an argument ensued.  Duong claimed he packed some clothing and left home without telling his wife, but in hopes that she would ask him to return.  Thereafter, he slept in his car for several days and then stayed with his uncle for a few days.  He quit his job after deciding to move away with a friend.  He later learned that police were looking for him.  Duong spoke to others who he told that he could die if he lost his case.  He denied consulting a lawyer during that time.  Duong claimed that, because he was scared and thought it was better to live longer than to die, he decided to move out of state.  Before leaving, he withdrew his money from his retirement account and gave it to his wife.

Duong testified that he lived in Grand Junction, Colorado, for about seven or eight years before moving to Las Cruces, New Mexico.  During that time, he spoke to his wife on several occasions.  He then moved to Farmington, New Mexico, and his wife came to stay with him after he had a heart attack.  They moved to California, but eventually he moved back to New Mexico and then to Wyoming in 2010.  He was arrested in February or March 2012.

Duong denied doing any of the acts he was accused of, including having sexual intercourse with Nicole and Janet, touching them inappropriately, and putting grapes in Nicole's vagina. He admitted that he worked on cars at Carl's house nearly every Saturday, but claimed that Carl was always present. Duong further admitted that the victims would come to his house to go to church and that his wife helped out at Alice's wig shop, including on Saturdays. He claimed that he never watched that girls as he was always busy working. He further claimed that he was never alone with the girls from 1991 to 1999. Duong testified that his wife always watched the victims and that she would not go to the wig shop when she had to babysit. While Duong's mother lived with them, Duong claimed that she did not help watch the victims when they came over.

Duong admitted having a pornographic magazine but denied showing it to the victims and also denied having a pornographic video. He admitted that he owned a back massager but denied ever using it on the victims.

Duong claimed that more than a month before the victims made their allegations, Nicole told him that she was on James Street when three boys pulled her into a white van. He testified that Nicole told him that it was alright because she liked one of the boys. Duong testified that he believed the false allegations against him arose because Nicole had a boyfriend, did not want to stay home, and kept staying at other people's houses, which caused Mary to worry.

Duong was tried by a jury on June 10 through June 12, 2013, and Duong was found guilty as charged as to counts one, three, four and five and guilty of the lesser offense of attempted aggravated rape of Janet as to count two[7]  The Trial Court denied Duong's motions for new trial.[8]

---

[7]St. Rec. Vol. 1 of 8, Trial Minutes, 6/10/13; Trial Minutes, 6/11/13; Trial Minutes, 6/12/13; Verdict, 6/12/13; St. Rec. Vol. 4 of 8, Trial Transcript, 6/10/13; Trial Transcript, 6/11/13; St. Rec. Vol. 5 of 8, Trial Transcript, 6/11/13 (con't); Trial Transcript, 6/12/13; St. Rec. Vol. 6 of 8,Trial Transcript, 6/12/13 (con't); St. Rec. Vol. 7 of 8, Opening Statements Transcript, 6/11/13; Closing and Rebuttal Argument Transcript, 6/12/13.

[8]St. Rec. Vol. 1 of 8, Motion for New Trial, 6/17/13; Memorandum in Support of Motion for New Trial, 6/17/13; Supplemental Motion for a New Trial, 6/18/; Sentencing Minutes, 6/24/13; St. Rec. Vol. 6 of 8, Sentencing

On June 24, 2013, the Trial Court sentenced Duong to life imprisonment as to count one, 50 years as to count two, 15 years each as to counts three and four, and 10 years as to count five, each term to be served at hard labor without the benefit of parole, probation, or suspension of sentence, and each sentence to run concurrently.[9]

On direct appeal, Duong's appellate counsel asserted three errors[10]: (1) the Trial Court erred in admitting the recorded CAC interviews of Nicole and Janet without strict compliance with La. Rev. Stat. § 15:440.1, et seq. and in violation of his right to confrontation; (2) the Trial Court erred in denying his motion for new trial premised upon the prosecutor's reference to his post-arrest exercise of the privilege of self-incrimination; and (3) the Trial Court erred in failing to grant his motion for a mistrial premised upon the prosecutor's reference to "other crimes" evidence in his rebuttal argument.  On August 8, 2014, the Louisiana Fifth Circuit affirmed the convictions and sentences finding no merit in the issues raised, but remanded the case to the Trial Court with instructions to provide Duong with written notice of his sex offender notification and registration requirements by using the form set forth in La. Rev. Stat. § 15:543.1 and to correct errors in the Uniform Commitment Order regarding the dates of the offenses.[11]

On September 8, 2014, Duong filed a pro se writ application with the Louisiana Supreme Court.[12]  On April 17, 2015, the Louisiana Supreme Court denied Duong's writ application without

_____

Transcript, 6/24/13.

[9]St. Rec. Vol. 1 of 8, Sentencing Minutes, 6/24/13; St. Rec. Vol. 6 of 8, Sentencing Transcript, 6/24/13.

[10]St. Rec. Vol. 6 of 8, Appeal Brief, 13-KA-763, 1/14/14.

[11]*State v. Duong*, 148 So.3d 623 (La. App. 5th Cir. 2014); St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, 8/8/14.

[12]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 14 KO 1883, 9/8/14 (dated 9/2/14).

stated reasons.[13]  His conviction was final under federal law ninety (90) days later, on July 19, 2015, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1)).

On August 24, 2015, Duong submitted pro se to the Trial Court an application for post-conviction relief and brief in which he raised the following grounds for relief:[14] (1) ineffective assistance of trial counseling in failing to (a) investigate the case; (b) object to voir dire; and (c) raise a defense of false allegations; and (2) prosecutorial misconduct based on (a) the prosecution's systematic exclusion of minorities from jury; (b) knowingly presentation of false testimony, (c) suppression of evidence that one of the victims had run away and that the families did not believe the victims; and (4) threats made to the family members to force them to testify.  Duong also filed a motion for production of documents including a free copy of the trial record and specifically claimed he needed the grand jury transcripts, all motions filed in the case, transcripts of all pretrial hearings, the trial transcript, including voir dire examination, opening statements and closing arguments, the Trial Court's rulings on post-trial motions, and the sentencing transcript. [15]  He also filed a motion for production of free copies of the District Attorney's files.[16]

---

[13]*State v. Duong*, 168 So.3d 395 (La. 2015); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KO-1883, 4/17/15.

[14]St. Rec. Vol. 2 of 8, Application for Post-Conviction Relief, 8/28/15 (dated 8/24/15).

[15]St. Rec. Vol. 2 of 8, Motion for Production of Documents under Particularized Need, 8/28/15 (dated 8/24/15); Motion for Production of the District Attorney's Files, 8/28/15; Memorandum in Support of Application for Post-Conviction Relief, 8/28/15 (dated 8/24/15).

[16]St. Rec. Vol. 2 of 8, Motion for Production of the District Attorney's Files, 8/28/15.

On September 21, 2015, the Trial Court found that Duong was not entitled to the grand jury transcript and had not made a sufficient showing of particularized need for a free copy of the other transcripts.[17]    The Trial Court found that Duong should request the District Attorney's records from the DA and that he should direct his request for trial records to the Clerk of Court for Jefferson Parish.[18]

Duong filed a motion for stay of proceedings and an intent to seek writs and requested a return date.[19]    The Trial Court granted Duong's motion for a stay and set a return date for November 30, 2015.[20]  Duong filed an application for writs with the Fifth Circuit on October 20, 2015.[21]  On December 17, 2015, the Fifth Circuit denied Duong's related writ application finding no error in the Trial Court's rulings.[22]  Duong sought a writ of review with the Louisiana Supreme Court.[23]  On August 4, 2017, the Louisiana Supreme Court denied relief without stated reasons.[24]

In the interim, after the State filed a response and Duong filed a traverse, the Trial Court denied the post-conviction application on March 2, 2016, finding Duong failed to show any

---

[17]St. Rec. Vol. 2 of 8, Trial Court Order, 9/21/15.

[18]*Id.*

[19]St. Rec. Vol. 2 of 8, Motion for Stay of Proceedings, 10/23/15 (dated 10/19/15); Notice of Intent to Seek Writs and Request for Extended Return Date, 10/13/15 (dated 10/19/15).

[20]St. Rec. Vol. 1 of 8, Trial Court Order, 11/24/15; Trial Court Order, 12/7/15.

[21]St. Rec. Vol. 2 of 8, 5th Cir. Writ Application, 15-KH-662, 10/22/15 (dated 10/20/15).

[22] St. Rec. Vol. 2 of 8, 5th Cir. Opinion, 15-KH-662, 12/17/15.

[23]St. Rec. Vol. 14 of 15, La. S. Ct. Writ Application, 2015-KH-2128, 11/13/15.

[24]*State ex rel. Duong v. State*, 222 So.3d 720 (La. 2017); St. Rec. Vol. 8 of 8, La. S. Ct. Opinion, 2016-KH-0073, 8/4/17.

deficiency in counsel's performance or any resulting prejudice and failed to provide any evidence demonstrating prosecutorial misconduct.[25]

Duong submitted a writ application with the Louisiana Fifth Circuit seeking review of the Trial Court's March 2, 2016 order denying post-conviction relief.[26]  On April 28, 2016, the Fifth Circuit found Duong's challenge to the trial court's denial of his request for production of documents was repetitive, that he failed to demonstrate deficient performance by counsel or resulting prejudice, and that Duong failed to provide any evidence in support of his allegations of prosecutorial misconduct.[27]

On August 4, 2017, the Louisiana Supreme Court denied writs finding that Duong failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[28]

## II.    Federal Habeas Petition

On January 29, 2018, Duong filed a petition for federal habeas corpus relief in which he asserts the following grounds for relief[29]: (1) he was denied his rights to equal protection and due process when the state courts denied him discovery thereby preventing him from proving his ineffective assistance of counsel claims; (2) he was denied his rights of equal protection and due

---

[25]St. Rec. Vol. 8 of 15, State's Response to Application for Post Conviction Relief, 1/14/16; Traverse to State's Answer and Memorandum to Application for Post-Conviction Relief, 1/27/16 (dated 1/25/16); Trial Court Order, 3/2/16.

[26]St. Rec. Vol. 2 of 8, 5th Cir. Writ Application, 16-KH-187, 4/5/16 (dated 3/28/16).

[27]St. Rec. Vol. 2 of 8, 5th Cir. Order, 16-KH-187, 4/28/16.

[28]*State ex rel. Duong v. State*, 222 So.3d 703 (La. 2017) (per curiam); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 16-KH-1018, 8/4/17.

[29]Rec. Doc. 4.

process when the state courts denied his request for discovery thereby preventing him from proving his claims of prosecutorial misconduct; (3) the Trial Court erred in admitting the CAC videos in violation of his Fifth and Sixth Amendment right of confrontation; (4) the Trial Court erred in denying his motion for new trial; (5) the Trial Court erred in denying his motion for mistrial.

The State filed a response in opposition to the petition asserting that Duong timely filed his federal petition and exhausted his claims with the exception of a portion of claim three in which he alleges a Fifth Amendment violation.[30]  The State asserts that the remaining claims can be dismissed as meritless.

Duong filed a reply reiterating his claims.[31]  He did not address his failure to exhaust his Fifth Amendment claim.

### III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this Court on January 29, 2018.[33]  The threshold questions on habeas review under the amended statute are whether the

---

[30]Rec. Doc. No. 18.

[31]Rec. Doc No. 20.

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court received Duong's original petition on January 30, 2018, and it was eventually filed on February 8, 2018, when it received the filing fee.  Duong dated his signature on the original pleadings on January 29, 2018, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for filing with a federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Duong's federal petition was timely filed. The State contends that petitioner did not properly exhaust his claim that the introduction into evidence of the CAC videotapes violated his Fifth Amendment rights.

## IV.    Exhaustion Doctrine and Procedural Default

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20, 102 S.Ct. 1198).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court in a procedurally proper manner. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state

courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78, 92 S.Ct. 509). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the State's highest court, and vice versa. *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). Furthermore, a petitioner does not fairly present a claim to the State's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. Id., 541 U.S. at 32, 124 S.Ct. 1347.

A review of the record shows that, while petitioner referenced the Fifth Amendment in his Table of Authorities under "Statutory Authority," he did not include any argument regarding the Fifth Amendment in addressing his claim related to the CAC videos.[34]  In his brief in support of his writ application to the Louisiana Supreme Court, Duong merely referenced the Fifth Amendment, but once again never presented any argument that the admission of the CAC video violated his Fifth Amendment rights to due process; rather he only addressed the Sixth Amendment Confrontation Clause.[35]  As petitioner did not fairly present his Fifth Amendment claim to any state court, he has not exhausted that claim.

Normally, the Court would recommend that Duong's petition be dismissed without prejudice to allow him to pursue exhaustion of his claim in the appropriate state courts.  However,

---

[34]St. Rec. Vol. 6 of 8, Appellate Brief, 13-KA-0763, pp. 4, 13-19, 1/14/14.

[35]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, pp. iii, 1, 8-13, 9/8/14 (dated 9/2/14).

unexhausted claims, those claims which were not "fairly presented" to the state courts, may be considered "technically" exhausted if the habeas petitioner is now prohibited from litigating those claims in the state courts because of some procedural rule. If that is so, then those "technically" exhausted habeas claims might be considered procedurally defaulted.

If a claim has not been adjudicated on the merits in state court, federal review of that claim may be barred by the doctrine of procedural default if the petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 1780 (2009) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). When state court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. *See Coleman*, 501 U.S. at 722. "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas ..." *Id.*, at 735 n. 1.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (citing *Coleman*, 501 U.S. at 731–33 and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)); *Fuller v. Johnson*, 158 F.3d 903, 905–06 (5th Cir. 1998). In such a case, there is no difference between non-exhaustion and

procedural default.  *Magouirk*, 144 F.3d at 358.  Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed.  *Id.*

In this case, it is reasonable to conclude that Duong is now unable to litigate his claim that admission of the CAC videos violated his Fifth Amendment rights in the Louisiana courts, and that any attempt to litigate this claim would result in dismissal on state procedural grounds.  Based on the record, any attempt to litigate this claim now likely would be dismissed as repetitive under La. Code Crim. P. arts. 930.4(D) or (E)[36] or as time-barred by the provisions of La. Code Crim. P. art. 930.8.[37]  Therefore, petitioner's claim that admission of the CAC video violated his Fifth Amendment rights is now considered procedurally defaulted.  *Sones*, 61 F.3d at 416 (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)).  The procedural default doctrine bars federal habeas corpus review if the state courts would now refuse to address a habeas petitioner's unexhausted federal claims because litigation of those claims would be barred by state procedural rules.

Federal habeas review of a "technically" exhausted and now procedurally defaulted claim is barred "... unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750–51, 111 S.Ct. 2546.

---

[36]Art. 930.4(D) provides that "[a] successive application may be dismissed if it fails to raise a new or different claim."  Art. 930.4(E) also provides "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

[37]Art. 930.8 provides a two-year period of limitations for filing applications for post-conviction relief and that period generally runs from the date that the applicant's judgment of conviction becomes final under Louisiana law, which for Duong was July 19, 2015.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

In this case, Duong has not offered any cause for the default which would excuse the procedural bar. The Court's review of the record does not support a finding that any factor external to the defense prevented Duong from raising the claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

Should Duong attempt later to argue to a reviewing Court that his appellate counsel was ineffective in failing to raise the issue on direct appeal, such an argument would be unavailing. Duong has not exhausted state court review of any such ineffective assistance of counsel claim and therefore cannot rely on such a claim as cause to excuse the bar. *See Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000) (requiring exhaustion of a claim of ineffective assistance of counsel as cause for procedural default).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43, 102 S.Ct. 1558). Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and

petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Duong's defaulted claim is therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded where petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1998).[38]

Duong may avoid this procedural bar only when a fundamental miscarriage of justice will occur if the merits of his claim is not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To establish a fundamental miscarriage of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 495-96; *Glover*, 128 F.3d at 902-03. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 & n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not

---

[38]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte but may do so in its discretion. *Id*.

adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Duong does not present any evidentiary support, and the record contains nothing, to suggest or establish his actual innocence on the underlying convictions. In other words, he fails to present any evidence or argument of the kind of actual innocence that would excuse the procedural default. He, therefore, has failed to overcome the procedural bar to his claims, and his claim alleging the admission of the CAC videos violated his Fifth Amendment rights should be dismissed with prejudice.

## V.    <u>Standards for a Merits Review</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not

'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state

court decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*,

210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law

if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134

S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context

of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410.

The Court, however, noted that an unreasonable application of federal law is different from an

incorrect application of federal law. *Id.* " '[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the state-court decision applied [a

Supreme Court case] incorrectly.' " *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford*

*v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699

(2002)).

Thus, under the "unreasonable application" determination, the Court need not determine

whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d

230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the

precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    Denial of Requests for Trial Court Records and Transcripts and District Attorney Files (Claim Nos. 1 and 2)

Duong claims that he was denied equal protection, due process of law and the opportunity to fully present and prove his claims of prosecutorial misconduct and ineffective assistance of counsel presented in his application for post conviction relief when the state courts denied his request for free copies of the trial court record and the District Attorney's files.

In conjunction with his application for post conviction relief, Duong filed several motions seeking free copies of the grand jury transcripts, the complete trial court record, including motions, court rulings, and hearing and trial transcripts, as well as the District Attorney's files.[39]  The Trial Court denied his request and the Fifth Circuit found no error in that ruling, finding that Duong's conclusory allegations of inconsistencies between witnesses' grand jury and trial testimonies was not sufficient to meet an exception for disclosure of the grand jury transcripts and that he had not shown a particularized need for the other requested documents.[40]  This was the last reasoned opinion on the issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

---

[39]St. Rec. Vol. 2 of 8, Motion for Production of Documents under Particularized Need, 8/28/15 (dated 8/24/15); Motion for Production of the District Attorney's Files, 8/28/15; Memorandum in Support of Application for Post-Conviction Relief, 8/28/15 (dated 8/24/15).

[40]St. Rec. Vol. 2 of 8, Trial Court Order, 9/21/15; St. Rec. Vol. 2 of 8, 5th Cir. Opinion, 15-KH-662, 12/17/15.

Duong does not present a cognizable issue for federal habeas review based on his perceived rights under state law.  It is well settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also*, *Swarthout v. Cooke*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted).

Under federal law, on direct appeal, an indigent criminal has an absolute right to a trial transcript, or an alternative device that fulfills the same function. *Griffin v. Illinois*, 351 U.S. 12, 18-20 (1956).  There is no question that the trial transcript was in fact provided to petitioner's appellate counsel, which Duong does not deny.  There is, however, no general due-process right of access to state-court records on collateral review in criminal proceedings. *See*, *e.g.*, *United States v. MacCollom*, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); *Deem v. Devasto*, 140 F. App'x 574, 575 (5th Cir. 2005); *Cook v. Cain*, Civ. Action No. 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015).

On collateral review, the burden is on the petitioner to positively demonstrate that there is a particularized need for the requested documents and transcripts and that the request is not frivolous. *MacCollom*, 426 U.S. at 326; *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973) (affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state court record and trial transcripts on direct appeal and where "the petitioner

did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial"). In the absence of a showing of a "particularized need" for such discovery, petitioner is not entitled to habeas corpus relief, especially in the context of a request for grand jury testimony. *See Robinson v. Cain*, Civ. Action No. 05–5478, 2011 WL 890973 at *8 (E.D. La. Feb. 7, 2011) (Chasez, M.J.), *adopted*, 2011 WL 901193 (E.D. La. March 14, 2011)(Zainey, J.)(citing *Pittsburgh Plate Glass Co., v. United States*, 360 U.S. 395, 399–01 (1959)(because defendant failed to meet burden of showing "particularized need", trial court did not err in refusing to disclose grand jury testimony)).

Based on the unsubstantiated nature of Duong's ineffective assistance of counsel and prosecutorial misconduct claims, addressed below, all of which are meritless, vague, and conclusory, Duong has not met his burden of showing particularized need for the records or transcripts.

### A. Ineffective Assistance of Counsel

Duong alleges that he was denied effective assistance of counsel. He claims his trial counsel: 1) "failed to object during voir dire examination when the state systematically excluded minorities from the jury [and] [t]he State was not required to give any race neutral reasons for the exclusions;" 2) "failed to investigate the circumstances surrounding Nicole's running away from home to be sexually involved with her boyfriend;" and 3) failed to mount an actual innocence/fabrication defense.[41]

---

[41]Rec. Doc. No. 4-2, pp. 20-23.

Duong asserted these arguments in his state application for post-conviction relief. The Trial Court denied the ineffective assistance of counsel claims.[42] The Louisiana Fifth Circuit denied the related writ application.[43] The Louisiana Supreme Court denied relief finding that Duong had failed to show he received ineffective assistance of counsel under *Strickland*.[44]

### 1. __Standards of Review under *Strickland*__

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v.*

---

[42]St. Rec. Vol. 2 of 8, Trial Court Order, 9/21/15.

[43]St. Rec. Vol. 2 of 8, 5th Cir. Order, 16-KH-187, 4/28/16.

[44]*State ex rel. Duong v. State,* 222 So.3d 703 (La. 2017) (per curiam); St. Rec. Vol. 2 of 8, La. S. Ct. Order, 16-KH-1018, 8/4/17.

*Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland,* 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's " 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' ") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore*

*v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

### a. **Object to Voir Dire**

Duong first claims that his trial counsel was ineffective for failing to object to the prosecution's systematic exclusion of minorities during jury selection.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. *Batson*, 476 U.S. at 89. In evaluating whether a petitioner has established a *Batson* violation, a three-step analysis is employed, with the first step requiring a petitioner to make a prima facie showing that a peremptory challenge has been exercised on the basis of race. *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

In the instant matter, Duong has not demonstrated a prima facie case of racial discrimination. The minutes reflect that the prosecution exercised only five peremptory

challenges.[45]  While he claims that the State "systematically excluded minorities from the jury,"

he provides no evidence to support his unsupported allegation that the State misused its peremptory

strikes.  Nor does he offer any evidence of the racial composition of the venire or the racial

composition of the final trial jury.  He offers no reasons for his failure to do so here or in the state

courts.  While there is no transcript of the voir dire from his trial, given there was no *Batson*

objection made during jury selection, the transcript simply would not assist in analyzing Duong's

claim as it would not have revealed the race of the prospective jurors.

Duong has failed to provide even minimal evidence in support of his claim, either here or

in the state courts.  Accordingly, Duong has clearly failed to satisfy his burden of proof to show

that his counsel failed to make what would have been a meritorious objection which would entitle

him to relief under *Strickland*.  *See Turner v. Epps*, No. 07-77, 2010 WL 653880, at *7 (N.D. Miss.

Feb 19, 2010) ("As Petitioner cannot establish that any minority venire person was struck by the

State, much less that they were struck with a discriminatory intent, he cannot establish ineffective

assistance of counsel on this conclusory argument"); *Bell v. Director, TDCJ-CID*, No. 03-36, 2005

WL 977771, at *6 (E.D. Tex. Nov. 2, 2005)(citations omitted) (Petitioner's claim that a juror was

improperly struck "is a conclusory allegation ... insufficient to support a petition for a writ of

habeas corpus."); *Eastridge v. United States*, 372 F.Supp.2d 26, 61 (D.D.C. May 26, 2005)

("Petitioners cannot establish improper application of peremptory challenges because they present

no evidence of selective exclusion and cannot produce evidence of the racial composition of the

---

[45]St. Rec. Vol. 1 of 8, Trial Minutes, 3/10/13.

venire."). Therefore, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*. Duong is not entitled to relief on this claim.

**b.   Investigate and Prepare a Falsification/Actual Innocence Defense**

Duong claims his counsel was ineffective when he failed to investigate the case. He specifically claims that had counsel investigated, he would have learned that Nicole had a boyfriend with whom she was sexually involved and that she had a history of running away from home. He also claims his counsel failed to present a fabrication defense.

When a habeas petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.' " *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation). Duong has failed to establish that any further investigation was needed or that the investigation would have uncovered exculpatory evidence as he contends.

Duong does not offer any evidence to support his claim that Nicole had a history of running away or that she was sexually active. Further, any evidence of the victim's sexual history would

not have been admissible under the circumstances of the case, and defense counsel had no legal basis to present evidence of Nicole's prior sexual conduct with other persons. *See* La. Code Evid. Art. 412 (prohibiting evidence regarding the past sexual behavior of the victim in sexual assault cases, except (1) when there is an issue of whether the accused was the source of semen or injury, "provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense," and (2) when the past sexual behavior is with the accused and there is an issue of whether the victim consented to the charged sexually assaultive behavior.) Thus, Duong cannot establish that counsel was deficient in any way nor that counsel's failure to investigate the victim's history, including her past sexual history, prejudiced him at trial.

Duong also claims that his counsel erred in failing to put forth a fabrication defense in light of the fact that he is actually innocent. A review of the record could not be farther from the truth. The transcript is replete with efforts by Duong's counsel to attempt to establish that the victims' allegations were fabricated. It is clear from the record that counsel attempted to discredit the allegations and testimony of the victims through cross-examinations in an effort to raise doubt about the reliability of their testimony and in support of Duong's claim of actual innocence. Duong's counsel utilized the testimony of each of the State's witnesses on cross-examination, along with the victims' CAC interviews, to challenge the veracity of the accusations against Duong. Duong's counsel took great strides to point out the inconsistencies in the victims' allegations. Further, Duong testified on his own behalf and vehemently denied the allegations. Short of perhaps using the word "fabricated" or the phrase "actual innocence," Duong's counsel did in fact present a fabrication/actual innocence defense. The testimony was presented to the jury, who as the trier of fact, weighed and considered the testimony. The fact that the jury did not

believe the defense does not render counsel's performance constitutionally deficient or prejudicial. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted). Duong has provided no basis to undermine the deference due his counsel's trial tactics and strategy.

The state courts' denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*. Duong is not entitled to relief on these claims.

## B. **Prosecutorial Misconduct**

Duong claims that the State used its peremptory challenges to systematically eliminate minorities from his jury. He also claims that the prosecution failed to disclose evidence that proved Nicole ran away to be with her boyfriend as well as evidence that the family members did not believe the victims' allegations against Duong and that their grand jury testimony was exculpatory in nature. Duong also claims that the prosecutor threatened and coerced the witnesses to testify against him at trial and knowingly presented false testimony.

### 1. **Striking Minorities During Jury Selection**

Duong claims that the prosecution utilized its peremptory challenges to eliminate minorities from the jury. As outlined above in this Court's review of Duong's claim of ineffective assistance of counsel for failing to object to the State's use of peremptory challenges during jury selection, Duong failed to demonstrate that the State struck *any* minority venire person let alone that the State had any discriminatory intent in utilizing its peremptory challenges.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of United States Supreme Court precedent. Duong is not entitled to relief on this claim.

## 2. <u>Suppression of Exculpatory Evidence</u>

Duong claims that the prosecution suppressed exculpatory evidence that proved that Nicole ran away to be with her boyfriend. Duong also claims that evidence was suppressed showing that the victims' family members did not believe the victims' allegations against Duong and that the grand jury testimony by the family was exculpatory in nature.

The Fifth Circuit found that Duong failed to provide evidence is support of his allegations of prosecutorial misconduct, including any evidence that there were inconsistencies between the grand jury and trial testimonies of the witnesses.[46] It further found that Duong failed to demonstrate that the State suppressed any evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[47] This was the last reasoned opinion on the issue.

The United States Fifth Circuit Court of Appeals has applied the standards set in *Brady v. Maryland*, 373 U.S. 83 (1963), to address a habeas petitioner's claim that the State failed to disclose potentially exculpatory or impeachment evidence of false or inconsistent statements by refusing to produce grand jury transcripts. *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). The *Brady* materiality determination is a mixed question of law and fact. *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

---

[46] St. Rec. Vol. 2 of 8, 5th Cir. Order, 16-KH-187, p. 2, 4/28/16.

[47] *Id.*

In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to disclose this kind of evidence exists even though there has been no request by the defendant. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). The prosecution's duty to disclose includes both exculpatory and impeachment evidence. *Strickler*, 527 U.S. at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

*Brady* claims involve "the discovery after trial of information which had been known to the prosecution but unknown to the defense." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *Agurs*, 427 U.S. at 103). Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *see Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558–59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence). *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted).

To prove a *Brady* violation, a defendant must establish that the evidence is favorable to the accused because it is exculpatory or impeachment, that the evidence was suppressed by the State,

and that prejudice resulted from the non-disclosure. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler*, 527 U.S. at 281–82). However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.' " *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995).

Duong has not demonstrated that the State withheld exculpatory or impeachment evidence in violation of his constitutional rights. He has not presented any proof from the record, by affidavit or by other means, that the State had or withheld information about either victim's history. While he claims that "the grand jury testimonies of the State's witnesses are drastically different from their trial testimonies" and that "[t]he family told Duong that their personal testimonies were exculpatory in nature"[48], his allegations are not supported by any affidavits from the family members. Rather, his allegations appear to be based upon his assumptions of what transpired during of the grand jury proceedings.

Where, as here, a petitioner presents no evidence, whatsoever, in support of a contention that *Brady* material was in fact withheld from the defense, his claim fails at the initial prong of the *Brady* inquiry. *Williams v. Cain*, Nos. 06–0224 and 06–0344, 2009 WL 1269282, at *5 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Watson v. Cain*, Civ. Action No. 06–613, 2007 WL 1455978, at *7 (E.D. La. May 17, 2007); *Abron v. Cain*, Civ. Action No. 05–876, 2006 WL 2849773, at * 10 (E.D. La. Oct. 3, 2006); *Harris v. United States*, 9 F.Supp.2d 246, 275 (S.D.N.Y. 1998) ("[T]he government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to disclose evidence favorable to [him]."), *aff'd*, 216 F.3d 1072 (2nd Cir. 2000); *see also United States v. Avellino*, 136

---

[48]Rec. Doc. No. 4-2, p. 25.

F.3d 249, 261 (2nd Cir. 1998); *Cruz v. Artuz*, 97–CV–2508, 2002 WL 1359386, at * 14 (E.D.N.Y. June 24, 2002).

Duong's claim that the prosecution withheld favorable evidence is entirely lacking in factual support.  He has not demonstrated a violation of *Brady* or any constitutional provision arising from the failure to provide him with a grand jury transcript.  The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law.  Duong is not entitled to relief on this claim.

### 3.  Threatening Witnesses/Presentation of False Testimony

Duong claims that the prosecutor threatened the witnesses to testify against him.[49]  He further claims the prosecution knowingly presented false testimony.  In the last reasoned opinion on the matter, the Fifth Circuit found that Duong failed to provide any evidence to support his allegations.[50]

A state denies a defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United Sta*tes, 405 U.S. 150, 766, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illin*ois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  In order to obtain relief, the defendant must show that: (1) the testimony was actually false, (2) the State knew the testimony was false, and (3) the testimony was material.  *Duncan v. Cockrell*, 2003 WL 21545926, at *3, 70 F. App'x 741 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is any reasonable likelihood that it could have affected

---

[49]Rec. Doc. No. 4-2, p. 25.

[50]St. Rec. Vol. 2 of 8, 5thCir. Order, 16-KH-187, p. 2, 4/28/16.

the jury's verdict. *Duncan*, 2003 WL 21545926, at *3, 70 F. App'x 741 (citing *Nobles*, 127 F.3d at 415).

Here, it is clear Duong has not met his burden of proving these elements. He has failed to establish that any of the witnesses' testimony was actually false. At most, there is evidence that portions of the victims' testimony differed from the statements they made at the time of the allegations 14 years earlier. However, courts have held that conflicting or inconsistent testimony is insufficient to establish perjury. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)). Thus, merely because the victims' testimony at trial differed from their previous statements, does not establish that the testimony was actually false. Furthermore, Duong's counsel had the opportunity to question the victims at trial to determine the veracity of their testimony.

As for his claim that the prosecutor coerced the witnesses to testify against him, Duong does not explain which witnesses were allegedly threatened. Nor does Duong make any specific allegations as to what the prosecutor allegedly said to the witnesses to coerce them to testify against. Duong has not provided any support whatsoever for his allegations that the prosecution actually threatened or coerced any witnesses. None of the witnesses testified at trial that they had been coerced or threatened to testify against Duong. Duong has not provided affidavits from any of the witnesses supporting a claim that they were threatened. Further, while the State presented the testimony of Carl, Alice and Mary in its case-in-chief, none of the witnesses gave an opinion regarding the truthfulness of the victims' allegations. Duong simply has not established that any threats were ever made and therefore fails to satisfy his burden of proof. *Brooks v. Cain*, Civ. Action No. 05–3004, 2007 WL 2900291, at *7 (E.D. La. Sept. 27, 2007). .

The state courts' denial of relief on these issues was not contrary to or an unreasonable application of Supreme Court precedent. Duong is not entitled to relief on these issues.

## VII.    CAC Videos Violated Sixth Amendment Right of Confrontation (Claim No. 3)

Doung claims his Sixth Amendment right to confrontation was denied when the Trial Court admitted into evidence the CAC videos of Nicole and Janet without requiring strict compliance with La. Rev. Stat. § 15:440 et seq. Duong claims that the State did not produce the interviewer as a witness and that Detective Broussard did not "supervise" the interviews and therefore the CAC videos were not admissible under state law.

The Fifth Circuit addressed the issue on direct appeal and found that the evidence was sufficient to demonstrate that Detective Broussard was the supervisor of the CAC interviews within the meaning of Louisiana law.[51] Finding no violation of state law, the Fifth Circuit concluded that there was no violation of the right to confrontation.[52] The Louisiana Supreme Court denied writs without opinion.[53]

As the Court has already discussed, federal habeas corpus review is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law. *See Swarthout*, 131 S.Ct. at 861. Any alleged impropriety based on state law does not warrant federal habeas review or relief.

Duong's federal law claim does not entitle him to relief as the admission of the CAC videos did not violate Duong's Sixth Amendment right to confrontation. In *Crawford v. Washington*, 541

---

[51]*Duong*, 148 So.3d at 639-41; St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, 8/8/14.

[52]*Id.* at 641; St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, 8/8/14.

[53]*Duong*, 168 So.3d at 395; St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KO-1883, 4/17/15

U.S. 36 (2004), the Supreme Court reiterated that the Sixth Amendment's Confrontation Clause gives the accused "[I]n all criminal prosecutions, ... the right ... to be confronted with the witnesses against him." *Crawford*, 541 U.S. at 59.  The Supreme Court held that the Confrontation Clause permits admission of "[t]estimonial statements of witnesses absent from trial ... only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.*, at 53–54.  Testimonial statements include "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.*, at 51; *see Bullcoming v. New Mexico*, 564 U.S. 647, 657-58, 131 S.Ct. 2705, 2713 (2011) (defendant has the right to cross-examine the person who actually performed testing or examination of evidence); *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (expert report is "functionally identical" to testimonial statement).

Whether a defendant's confrontation right was violated is a mixed question of law and fact. *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008); *Horn v. Quarterman*, 508 F.3d 306, 312 (5th Cir. 2007).  Because Duong's Confrontation Clause claim was adjudicated on the merits by the state court, this federal court is "prohibited from granting habeas relief unless the state court's decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Buckenberger v. Cain*, 471 F. App'x 405, 406 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)) (citing *Fratta*, 536 F.3d at 499).

*Crawford* is premised on a defendant's right to cross-examine. 541 U.S. at 53–54. No violation of the Confrontation Clause occurs where the declarant testifies at trial and is subject to cross-examination. *United States v. Owens*, 484 U.S. 554, 560 (1988); *California v. Green*, 399 U.S. 149 (1970); *Carson v. Collins*, 993 F.2d 461, 464 (5th Cir. 1993), *cert. denied*, 510 U .S. 897 (1993). Duong had a full opportunity to cross-examine Nicole and Janet about the allegations of sexual abuse and the assertions made to Gordon, the CAC forensic interviewer, in the videotaped statements. As the Fifth Circuit has held, under these circumstances, "[t]he confrontation clause requires no more." *Carson*, 993 F.2d at 464.

Duong's claim that his inability to cross-examine Gordon violated his right to confrontation fares no better. Gordon simply questioned the victims during the interviews. Duong does not now, and did not before the state courts, claim that Gordon made any testimonial statements during the interviews. As there is no claim that Gordon's questions were testimonial in nature, the introduction into evidence of the videos of the interviews did not violate the confrontation clause. *United States v. Wolford*, 386 F. App'x 479, 483 (5th Cir. 2010) (admission of portions of interview transcript did not violate Sixth Amendment right to confrontation where reporter's questions did not speak the truth of any matter but rather gave context to defendant's statements); *Stoll v. Key*, Case No. 3:17-cv-05158-BHS-JRC, 2017 WL 4803909, at *13-14 (W.D. Wash. Aug. 31, 2017) (where videotape of interview of victim was admitted into evidence, unavailability of detective who interviewed victim did not violate confrontation clause where defendant did not claim detective's questions were testimonial), *report and recommendation adopted by*, 2017 WL 4777012 (W.D. Wash. Oct. 23, 2017).

The denial of relief by the state courts was not contrary to or an unreasonable application of federal constitutional precedent.  Duong is not entitled to relief on this claim.

## VIII.   Failure to Grant a New Trial (Claim No. 4)

Duong claims the Trial Court erred in denying his motion for new trial based on the references to his post-arrest exercise of his right to remain silent made during the trial.

During trial, and over defense counsel's objection, the prosecutor questioned Detective Broussard about his meeting with Duong following his extradition back to Jefferson Parish.  The following exchange occurred:

Q.      When you met with Mr. Duong, Detective, was he informed of his rights?

A.      He was advised of his rights, yes.

Q.      Did you do that?

A.      Yes, I did.

Q.      Did he indicate to you that he understood his rights?

A.      He understood his rights, yes.

Q.      Okay.  Did he agree to give you a statement?

A.      No.  After I told him that I wanted to talk – after I advised him of his rights, I wanted to talk to him about the charges, he immediately told me that he and his family had secured an attorney, Bruce Netterville.  And he told me that his attorney told – advised not to talk to me.  I then stopped whatever I – I didn't interview.  I didn't ask him any more questions.  And I left.[54]

During closing argument, the prosecutor referenced Detective Broussard's interview of Duong.  The prosecutor stated:

---

[54]St. Rec. Vol. 5 of 8, Trial Transcript (con't), pp. 283-285, 6/11/13.

What else did he do when he was on the run?  Henry Tony; that's his alias, one of the aliases he sued.  If he was so innocent, why use an alias?  He didn't talk to a Lawyer.  However, when he was arrested in Wyoming, when the police went to go interview him at the jail here, he had a lawyer before they even got there.  So at some point, over the 13 years that he was gone, he did learn about the legal system.  Did he call anybody down here?  Did he turn himself in?  No.  He stayed on the run until he was caught.  That's what he did because he is guilty.  That's why he fled.[55]

Defense counsel raised the issue of the references to Duong's post-arrest exercise of his right to remain silent in his supplemental motion for new trial, which the Trial Court denied.[56]  The issue was again raised on appeal and the Fifth Circuit found that the Trial Court clearly erred in allowing the state to question Detective Broussard regarding Duong's exercise of his right to remain silent and that the error was compounded when the prosecution referenced it in closings.[57]  The Fifth Circuit, however, relying on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 91 (1976), found harmless error due to the "extraordinary strong" and "particularly overwhelming" evidence.[58]  The Louisiana Supreme Court denied writs without stated reasons.[59]

In general, the prosecution is prohibited from using a defendant's post-arrest silence as incriminating evidence or for impeachment purposes.  *Doyle*, 426 U.S. at 610.  In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court established the standard for determining whether a *Doyle* error merits relief on collateral review.  The Supreme Court held that a *Doyle* error must be assessed in terms of its potential impact on the jury and that a *Doyle* error can be

---

[55]St. Rec. Vol. 7 of 8, Closing and Rebuttal Argument Transcript, pp. 10-11, 6/12/13.

[56]St. Rec. Vol. 1 of 8, Supplemental Motion for a New Trial, 6/18/13; Sentencing Minutes, 6/24/13.

[57]*Duong*, 148 So.3d at 626; St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, p. 32, 35-36, 8/8/14.

[58]*Id*., at 643-44; St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, pp. 33-36, 8/8/14.

[59]*Duong*, 168 So.3d at 395; St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KO-1883, 4/17/15.

considered harmless. *Id*. at 638. An error is harmless when the evidence of the defendant's guilt is overwhelming. *Taylor v. Cain*, 545 F.3d 327, 336 (5th Cir. 2008).

In *Brecht*, because the prosecution had referred to the defendant's silence only infrequently, and because the other evidence of guilt was substantial, the Court concluded that the *Doyle* error did not substantially influence the jury's verdict and that federal habeas corpus relief was not warranted. *Id*. at 639.

In *United States v. Carter*, 953 F.2d 1449 (5th Cir. 1992), the Fifth Circuit considered the effect of comments by a prosecutor and arresting officer that the defendant would not make any statements. The court held that although such remarks constituted a *Doyle* error, the error was harmless. The court reasoned that the potential for prejudice was insufficient to warrant reversal because "the prosecutor did not focus or follow up on the response. Indeed, since [the defendant] had not at that point of the trial offered any exculpatory story, the evidence could have had only a minor effect as slight substantive evidence or remote impeachment-in-advance." *Id*. at 1463. Even though the error was compounded by the prosecutor's later impeachment of the defendant with his silence and by a comment on the defendant's silence during closing argument, the court nonetheless held that the error was harmless. *Id*. at 1465-67.

Insofar that Detective Broussard's challenge testimony and the prosecutor's comment made during closing argument regarding Duong's post-arrest silence violated *Doyle*, the errors were harmless. There was overwhelming evidence of Duong's guilt including (1) the detailed recorded statements of the victims taken at the time of the initial allegations; (2) the testimony of Janet and Nicole who both identified Duong as the perpetrator and recalled the incidences; (3) the medical evidence relating to the examination of Nicole which was consistent with blunt force

trauma to her hymen; (4) Dr. Benton's testimony that Nicole's injury was consistent with rape; (5) the testimony of a representative from Duong's former employer that Duong resigned his position and cashed out his retirement savings around the time of the allegations; and (6) family members' testimony corroborating the circumstances surrounding the victims' disclosure of the sexual abuse and Duong's actions taken thereafter, including that Duong fled the state and lived in a number of states under an alias. Based on the evidence presented at trial, it cannot be said that the reference to Duong's exercise of his right to remain silent had a substantial and injurious effect or influence in determining the jury's verdict.

The denial of relief by the state courts was not contrary to or an unreasonable application of federal constitutional precedent. Duong is not entitled to relief on his claims that the Trial Court erred in denying his motions for new trial.

## IX.  **Denial of Motion for Mistrial**

Duong's final claim is that the Trial Court erred in denying his motion for mistrial based on the prosecutor's improper reference to "other crimes" his during rebuttal argument.

The record reflects that during rebuttal, the prosecutor, in referring to Mary Duong's testimony, stated:

> She couldn't even – "Him, him," is what she said because he's had many victims in his life, more than just two girls.[60]

Defense counsel objected and the following bench conference was held:

MR. NETTERVILLE:

Now, he's intimating that there are other victims in this case.

---

[60]St. Rec. Vol. 7 of 8, Closing and Rebuttal Argument Transcript, p. 31, 6/12/13.

MR. HUFF:

>   There are.

MR. NETTERVILLE:

>   There are no – Wait.

MR. HUFF:

>   No, I'm going to explain it.

MR. NETTERVILLE:

>   Come on.  No.  That's –

THE COURT:

>   Well, I'll have him verify.

MR. HUFF:

>   Okay.

MR. NETTERVILLE:

>   That's – I want some sort of limited instruction. This –[61]

The bench conference ended and the prosecutor resumed with his argument:

MR. HUFF:

>   There are multiple victims in this case.  And no, Mr. Netterville, I'm not talking about physical victims; I'm talking about victims of suffering, victims of emotional abuse.  There are only two women in this room that we know of that he has physically abused.[62]

---

[61]*Id.*, at pp. 31-32.

[62]*Id.*, at p. 32.

Defense counsel again objected, the Trial Court sustained the objection, and a bench conference was held during which defense counsel argued that the prosecution's comments left the impression that there were other potential victims and moved for a mistrial based on the prosecution's reference.[63]  The Trial Court denied the motion and advised that it would instruct the jury that there was no evidence of other victims and to disregard the prosecutor's comment.[64] The Trial Court then instructed the jury:

> Ladies and gentlemen, let me just say this.  The Prosecutor said that there are no other victims that we know of.  You are to disregard that remark.  Do you understand?  Okay.[65]

The prosecutor then proceeded to clarify to the jury that Doung's wife and the Nicole and Janet's parents were the other victims he was speaking of and that they were left with the guilt of knowing they left Nicole and Janet in harm's way.[66]

When the issue was raised on direct appeal, the Fifth Circuit, relying on Louisiana law, found that the prosecutor's comment was not a reference to "other crimes" but rather "misspoken words regarding defendant's emotional victimization of the family that were corrected."[67]  The Fifth Circuit further found that the comments did not contribute to the verdict and that the denial

---

[63]*Id.*, at pp. 32-36.

[64]*Id.*, at p. 37.

[65]*Id.*, at p. 38.

[66]*Id.*, at p. 39.

[67]*Duong*, 148 So.3d at 646; St. Rec. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, pp. 36-33, 8/8/14.

of the motion for new trial was not an abuse of discretion under Louisiana law.[68] The Louisiana

Supreme Court also denied relief without added reasons.[69]

As an initial matter, Duong's arguments that the Trial Court erred in failing to grant a

mistrial under state law do not involve consideration of any questions of federal or constitutional

law, and review of such claims is not proper on habeas review. *See Lavernia v. Lynaugh*, 845 F.2d

493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a

constitutional dimension); *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007)

(state court's denial of a motion for a new trial does not necessarily constitute a violation of a

federal constitutional right) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). Thus,

even the misapplication of state law in denying the motion for mistrial would not entitled Duong

to relief. *Thomas v. Ieyoub*, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994)

("[E]rrors of state law, such as a denial of a mistrial, must rise to a constitutional dimension in

order to merit habeas relief."); *Smith v. Whitley*, No. 93-03208, 1994 WL 83777, at *1 (5th Cir.

Mar. 3, 1994) ("Even if the court's refusal to declare a mistrial was a violation of Louisiana law,

we, as a federal habeas court, are without authority to correct a simple misapplication of state law;

we may intervene only to correct errors of constitutional significance."); *Dickerson v. Guste*, 932

F.2d 1142, 1145 (5th Cir. 1991) (petitioner's claim that the state courts violated state law in

denying his motion for new trial provided no basis for federal habeas relief absent the showing of

---

[68]*Id*., at 644-47; St. Rec. Vol. Vol. 6 of 8, 5th Cir. Opinion, 13-KA-763, pp. 38-40, 8/8/14.

[69]*Duong*, 168 So.3d at 395; St. Rec. Vol. 8 of 8, La. S. Ct. Opinion, 2014-KO-1883, 4/17/15.

an independent violation of a federal constitutional right).  Any alleged impropriety based on state

law does not warrant federal habeas review or relief.

A state court's denial of a motion for mistrial will trigger federal habeas corpus relief only

if it was " 'error ... so extreme that it constitutes a denial of fundamental fairness under the Due

Process Clause.' " *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge

v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)).  In order to receive federal habeas relief, Duong

must show that "the trial court's error had a 'substantial and injurious effect or influence in

determining the jury's verdict.' " *Hernandez*, 125 F. App'x at 529 (citing *Brecht*, 507 U.S. at 623).

Duong must show that "there is more than a mere reasonable possibility that [the ruling]

contributed to the verdict.  It must have had a substantial effect or influence in determining the

verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

The question of fundamental fairness at trial under the Due Process Clause presents a

mixed question of law and fact.  *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *see

Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (whether evidence is admitted or

excluded contrary to the Due Process Clause also is a mixed question of law and fact).  The court

must determine whether the denial of relief by the state courts was contrary to or an unreasonable

application of federal law.

The record demonstrates that the state courts' denial of Duong's motion did not constitute

a denial of his due process rights, and that the denial had neither a substantial nor an injurious

effect in determining the jury's verdict.  Under federal law, "it 'is not enough that the prosecutor['s]

remarks were undesirable or even universally condemned.' " *Darden v. Wainwright*, 477 U.S. 168,

181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Darden v. Wainwright*, 669 F.2d 1031, 1036

(8th Cir. 1983)).  Instead, a petitioner must establish that the prosecutor's argument or comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987).  The prosecutor's remarks must be evaluated in the context of the entire trial.  *Greer v. Miller*, 483 U.S. 756, 765–66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985).  To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks."  *Jones v. Butler*, 864 F.2d 48, 356 (5th Cir. 1988); *Hogue v. Scott*, 874 F.Supp. 1486, 1533 (N.D.Tex.1994).

The Trial Court admonished the jury to ignore the comment by prosecutor that there were are no other victims "that we know of."  The Trial Court also instructed the jury that the statements of the attorneys was not evidence.[70]  The prosecutor clarified that his argument that there were "other victims" related to the emotional suffering of the victims' parents and aunt as a result of Duong's sexual abuse of Nicole and Janet.  Even if the comments at issue were improper, they were brief and were not egregious.  Further, there is no evidence that they were made in bad faith in a deliberate attempt to taint the proceedings or prejudice the jury.  Additionally, when the comments are considered in context of the entire trial, it cannot be reasonably said that they played a significant factor in the jury's verdict, especially considering the jury instructions and the overwhelming evidence of guilt admitted at trial.

---

[70]St. Rec. Vol. 1 of 8, Closing Jury Instructions, p. 5, 6/12/13.

Duong has not established a due process violation resulting from the denial of the motion for mistrial based on the prosecutor's comments during rebuttal argument. The denial of relief on this issue by the state courts was not contrary to or an unreasonable application of Supreme Court law. He is not entitled to federal habeas corpus relief.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Duong's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[71]

New Orleans, Louisiana, this 21st  day of September, 2018.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[71]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.